**William Joseph and Judith Ann COOTS, Appellants,**

v.

**Randall Wayne LEONARD, Appellee.**

No. 08–96–00278–CV.

Court of Appeals of Texas, El Paso.

Oct. 30, 1997.

Marc R. May, Odessa, for appellants.

Carmen Elaine Eiker, Midland, for appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

This case involves an interstate visitation dispute between the maternal grandparents and the natural father of a seven-year-old girl. The trial court declined to exercise jurisdiction over the controversy on the basis of forum non conveniens.

### SUMMARY OF THE EVIDENCE

Chandice Lynn Leonard was born in Virginia Beach, Virginia on March 11, 1990. Her mother was tragically killed in a car accident in September 1991. Her father, Randall Wayne Leonard, moved to Virginia in January of 1992, and remarried in May of that year. For all but a period of time between November 1990 and January 1992, Chandice has lived in Virginia.

Appellants, William Joseph Coots and Judith Ann Coots, are the maternal grandparents of Chandice. They sought visitation rights with their granddaughter, and an order issued by the Midland County Court at Law on December 18, 1992 named them joint

possessory conservators with specific periods of visitation. Leonard was appointed sole managing conservator.

Despite their status as court appointed conservators, the Coots were not notified of step-parent adoption proceedings in the Virginia courts. By order issued on January 13, 1994 by the Circuit Court of the City of Virginia Beach, Cynthia Shifflett Leonard adopted Chandice. In the spring of 1996, Leonard sought to modify the visitation rights spelled out in the 1992 Texas order. He also filed a motion to transfer jurisdiction under the Uniform Child Custody Jurisdiction Act, arguing first that because of the child's presence in Virginia for almost five years and the Virginia citizenship of the adoptive mother, Virginia had acquired jurisdiction over issues related to the "custody determination," or alternatively, that the court should decline to exercise jurisdiction based on forum non conveniens.

The trial court concluded that it had "continuing, exclusive jurisdiction of this cause and of all the parties by virtue of prior proceedings." The court also found, however, that "the State of Texas is ill-suited to make a determination of the issues currently pending in this case" and that "the State of Virginia is a more appropriate forum based upon the current circumstances involved." Thus, the court "decline[d] to exercise its jurisdiction" and purported to order that the suit be "transferred to the Circuit Court of the City of Virginia Beach, Virginia."

The Coots allege that on July 3, 1996, Leonard filed a petition to modify visitation in the Virginia court, relying on the Texas order. They further allege that as a result of this petition having been filed in Virginia before the validity of the order from the Texas court could be considered on appeal, they have been forced to retain counsel in Virginia. By order dated September 30, 1996, the Juvenile and Domestic Relations District Court for the City of Virginia Beach decreed that the Virginia beach Department of Social Services shall conduct "home studies" of the parties upon which the Virginia court can make determinations concerning what kind of visitation arrangement would be appropriate. We issued a stay order of the court order below to allow proper consideration of this appeal.

## STANDARD OF REVIEW

■ The standard of review we must employ is whether the trial court abused its discretion in declining to exercise jurisdiction to decide the visitation issues. Generally speaking, in the arena of forum non conveniens, Texas courts have consistently applied an abuse of discretion standard in evaluating a trial court's decision to decline jurisdiction. *See for example, Couch v. Chevron Int'l Oil Co., Inc.,* 672 S.W.2d 16 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In the family law context specifically, a trial court's refusal to exercise jurisdiction over a suit affecting the parent-child relationship will not be disturbed on appeal absent a clear abuse of discretion. *Creavin v. Moloney,* 773 S.W.2d 698, 702 (Tex.App.—Corpus Christi 1989, writ denied).

■ The test for an abuse of discretion is not whether, in our view, the facts present an appropriate case for the trial court's action. Instead, we determine whether the court acted without reference to any guiding rules and principles. *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). Stated differently, the test is whether the act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Company,* 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Insurance Co.,* 458 S.W.2d 649, 651 (Tex.1970). The fact that the trial court may decide a matter within his discretion in a different manner than we would does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959). *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985).

## JURISDICTION

### Uniform Child Custody Jurisdiction Act

■ In order to consider the issue of forum non conveniens, a court must first determine that it has jurisdiction. *Sarieddine v. Moussa,* 820 S.W.2d 837 (Tex.App.—Dallas 1991, writ denied). Texas enacted the

Uniform Child Custody Jurisdiction Act (UC-CJA) in 1983. The clear purpose of the Act is to discourage and eliminate child snatching, avoid jurisdictional competition, avoid continued relitigation of custody decisions, and to promote cooperation between the states to ensure that a custody decision is rendered in the state that can better determine the best interest of the child. TEX.FAM. CODE ANN. § 152.001 (Vernon 1996). Jurisdiction to enter a child custody determination arises from one of four sources:

● Texas is the home state of the child as of the date suit is commenced or had been the child's home state within six months of filing, the child was removed by a person claiming custody and a parent or person acting as a parent continues to live in Texas;

● It appears that no other state would have home state jurisdiction and it is in the best interest of the child that Texas assume jurisdiction because the child and at least one contestant have a significant connection with Texas other than mere physical presence, and there is available substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

● The child is present in Texas and has been abandoned or it is necessary to protect the child in an emergency because the child has been subjected to or threatened with abuse or is otherwise neglected or there is a serious and immediate question concerning the welfare of the child;

● It is in the best interest of the child that Texas assume jurisdiction and it appears that no other state would have jurisdiction under the first three prongs or another state has declined to exercise jurisdiction on the ground that Texas is the more appropriate forum.

■ Further, "[e]xcept on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify *custody* if the child and the party with custody have established another home state unless the action to modify was filed before the

new home state was acquired." [Emphasis added.] TEX.FAM.CODE ANN. § 152.003. Perhaps not surprisingly, litigation has arisen concerning the highlighted word "custody" and what it encompasses. To answer this question, two definitional distinctions are appropriate. The phrase "custody determination" as used in the hierarchy of jurisdiction is defined as a court decision providing for the custody of a child, including visitation rights. TEX.FAM.CODE ANN. § 152.002(3). "Custody," however, is defined as managing conservatorship of a child. TEX.FAM.CODE ANN. § 152.002(2). Thus, for purposes of the ability of a trial court to exercise its continuing jurisdiction to modify a prior order, custody and visitation are treated differently.

The Texas version of the UCCJA differs significantly from the uniform Act. The statute enacted in the majority of states does not prioritize "home state" jurisdiction over the "significant connection" test. One commentary has noted that:

> Because these two provisions are of equal rank under the UCCJA, the priority to decide the issue of custody between two states with concurrent jurisdiction is determined by the first filing. Unfortunately the uniform act does not conform to the preemptive federal act on the subject—the Parental Kidnapping Prevention Act of 1980 (PKPA) 28 U.S.C.A. § 1738A, which accords 'home state' priority for full faith and credit recognition. The Texas version of the UCCJA conforms to the PKPA; the home state is preferred and is superior to a 'significant connection' state. Only if a home state does not exist or declines jurisdiction will the significant connection ground prevail.[1]

. . .

Subsection (d) is the second major Texas variation on the uniform text. It establishes a restriction on the exercise of jurisdiction to modify custody (managing conservatorship) after a child has acquired a

---

1. The National Conference of Commissioners on Uniform State Laws has recently voted to amend the model Uniform Child Custody Jurisdiction and Enforcement Act. Under the new version, Section 201 gives priority to home state status.

new home state. Although the Texas court that rendered the original SAPCR order is restrained from modifying managing conservatorship, it retains continuing jurisdiction over the terms of possessory conservatorship, and over the child support order, so long as one contestant remains in Texas. . . .

Sampson & Tindall, TEXAS FAMILY CODE ANNOTATED § 152.003 (1997).

■ The Texas Family Code therefore explicitly contemplates that a Texas court retains jurisdiction over issues relating to possession of or access to the child even when the managing conservator relocates outside the state. Numerous appellate decisions have recognized the legislative intent to protect the "left-behind parent." In *Heartfield v. Heartfield,* 749 F.2d 1138 (5th Cir.1985), the Court addressed an on-going controversy between the parents in the state courts of Texas and Louisiana. The Heartfields were divorced in Texas; Mrs. Heartfield and the children moved to Louisiana while Mr. Heartfield remained in Texas. Mrs. Heartfield initially filed suit in the Texas court of continuing jurisdiction, seeking modification of child support. Her former husband filed a cross-action, requesting increased visitation and a reduction in child support. He also successfully had the case transferred to the county of his current residence. Mrs. Heartfield was unsuccessful in having the Texas proceeding dismissed or transferred to Orleans Parish in Louisiana, and the Texas court reduced the child support payments and made them contingent upon specific visitation rights. When Mrs. Heartfield filed suit in Louisiana, Mr. Heartfield sought an injunction in federal court seeking to restrain his former wife from proceeding in the Louisiana courts. The federal district court granted a temporary injunction and Mrs. Heartfield appealed. The Fifth Circuit first determined that it had federal question jurisdiction pursuant to the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C.A.

§ 1738A.[2] The Court then proceeded to address whether the district court correctly ruled that the Texas state court had continuing jurisdiction over the visitation and child support provisions of the original divorce decree. Finding that "the Texas legislature intended that the exception to continuing jurisdiction contained in § 11.53(d)[3] encompass only modifications in managing conservatorship," the Court emphasized that "the 'left-behind parent' is . . . assured of access to the Texas court for modification of visitation and of the child support obligation," *citing* Sampson and Tindall, *The UCCJA Comes to Texas—As Amended, Integrated and Improved,* 46 Tex.B.J. 1096, 1103 (1983). *Heartfield,* 749 F.2d at 1142. *See also, Welborn–Hosler v. Hosler,* 870 S.W.2d 323, 327 (Tex.App.—Houston [14th Dist.] 1994, no writ)(Texas retains power to modify all aspects of its decree except for managing conservatorship even after child's home state has changed); *Hemingway v. Robertson,* 778 S.W.2d 199, 201 (Tex.App.—Houston [1st Dist.] 1989, no writ)(With regard to continuing jurisdiction, issues of visitation, support and attorney's fees are treated differently than changes in custody; an action to modify visitation rights is not an action to modify custody); *Hutchings v. Biery,* 723 S.W.2d 347, 348–49 (Tex.App.—San Antonio 1987, no writ)(Texas retains continuing jurisdiction to modify and enforce visitation provisions of a Texas decree although managing conservator and child have established a new home state).

### Parental Kidnapping Prevention Act

■ When two states have concurrent jurisdiction, we look to the PKPA to prevent jurisdictional conflicts. Where a conflict arises, the PKPA takes precedence over state law. *In the Interest of S.A.V.,* 837 S.W.2d 80, 88 (Tex.1992). Here, under Texas law, the Texas court had continuing jurisdiction to modify the visitation order. Certainly, Virginia had home state status over the child; it arguably had "significant connec-

2. As an aside, we note that the United States Supreme Court has since determined that the PKPA does not confer jurisdiction upon the federal courts to determine interstate controversies. *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988).

3. Former § 11.53(d) was recodified as § 152.003(d), enacted by Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 TEX.GEN.LAWS 142, eff. April 20, 1995.

tion" status as well. Faced with concurrent jurisdiction, we turn now to the PKPA for guidance in determining the interstate conflict:

§ 1738A. Full Faith and Credit Given to Child Custody Determinations.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1)[4] of this section continues to be met and such State remains the residence of the child *or of any contestant.*

. . .

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, *or it has declined to exercise such jurisdiction to modify such determination.*

[Emphasis added.] Thus, the PKPA prevents Virginia from modifying the Texas visitation order until and unless Texas declines to exercise jurisdiction.

**Virginia Adoption Does Not Trump Texas Jurisdiction**

■■■■■ Leonard purported to argue in the trial court that the Virginia adoption somehow conferred exclusive jurisdiction on the State of Virginia to deal with all matters related to Chandice, including the possessory rights of the Coots. This position conflicts with the premise of the UCCJA which contemplates a system of concurrent jurisdiction in which more than one state may retain jurisdiction over a child. *Welborn–Hosler,* 870 S.W.2d at 326. We note that Leonard essentially concedes jurisdiction on appeal. Further, the action of the Virginia court in granting the adoption violated the terms of the UCCJA by failing to provide the Coots

with notice and the opportunity to be heard. The Texas codification of the uniform Act contains the following provision:

§ 152.004. Notice and Opportunity To Be Heard.

Before making a custody decree based on jurisdiction established under this chapter, reasonable notice and opportunity to be heard must be given to the contestants, to any parent whose parental rights have not been previously terminated, and to any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard must be given as provided under Section 152.005.

TEX.FAM.CODE ANN. § 152.004. The question arises with respect to this notice provision whether the term "custody decree" would include a decree that affects possessory rights, that is, rights to visitation. Section 152.002(5) defines "custody decree" as "a custody determination contained in a judicial decree or order." The term "custody determination," in turn, is defined in Section 152.002(3) as a court decision and court orders and instructions providing for the custody of a child, including "visitation rights." The use of the term "contestant" in Section 152.004 would include the Coots.[5] Section 152.004, read in context with the definitions provided in Section 152.002, demonstrates that the State of Virginia violated the terms of the Act by failing to provide notice to the Coots of an event so critical to their visitation rights as the adoption of their granddaughter by Leonard's new wife. We are confronted by a situation closely analogous to *Welborn–Hosler,* 870 S.W.2d at 326, in which a North Carolina court had modified terms of visitation contained in a Texas divorce decree, without abiding by the UCCJA. As the Houston Court concluded with respect to extending full faith and credit to the North Carolina decision, we are only bound to observe the decision of the Virginia Court for purposes of determining jurisdictional issues where Virginia abides by the UCCJA.

---

4. Subsection (c)(1) requires that a court have jurisdiction under its own laws. As we have noted, Texas had continuing jurisdiction to modify visitation.

5. Section 152.002(1) defines a "contestant" as a "person, including a parent, who claims a right to custody or visitation rights with respect to a child."

## Texas Had Jurisdiction Over Visitation Issues

We conclude that the trial court below correctly decided that Texas retained jurisdiction over the issue of visitation. We recognize that the Austin Court of Appeals has recently considered a trial court's decision to "decline to exercise jurisdiction" to modify visitation. In *Lemley v. Miller*, 932 S.W.2d 284 (Tex.App.—Austin 1996, no writ), the parties had been divorced in Oklahoma. Lemley was appointed as the custodial parent, and after the divorce, she moved with the child first to Louisiana, back to Texas, then to Germany, and back again to Texas. Miller at all times resided in Oklahoma. Lemley ultimately filed suit in Texas to modify the visitation provisions of the Oklahoma decree. The trial court determined that it lacked jurisdiction and dismissed the suit. On appeal, Lemley argued that under Section 152.003(a)(1), Texas had home-state jurisdiction. The appellate court agreed, adding that Texas was also the only state with which the mother and child had a significant connection. It appears to us that the Court improperly analyzed jurisdiction solely under Section 152.003(a), without reference to either Section 152.014 or the PKPA. Section 152.014 provides that if a court of another state has entered a custody decree, as Oklahoma apparently had, a Texas court could not modify the decree unless Oklahoma no longer had jurisdiction under a jurisdictional equivalent to the UCCJA, or had declined to exercise jurisdiction, *and* Texas had jurisdiction under Section 152.003(a). In this context, Section 152.003(a) accorded Texas concurrent jurisdiction, but Texas was nevertheless precluded from exercising that jurisdiction. TEX. FAM.CODE ANN. § 152.014; 28 U.S.C.A. § 1738A(f). Further, based on the PKPA, Section 152.003(d) and interpreting case law, there is a distinction between the trial court's ability to exercise its continuing jurisdiction to modify custody on the one hand and to modify visitation on the other. In our view, Texas lacked jurisdiction to modify the visitation specified in the Oklahoma decree, and we decline to follow *Lemley*. We turn now to the trial court's decision to decline jurisdiction on the basis of forum non conveniens.

## INCONVENIENT FORUM

Although the trial court clearly possessed jurisdiction to consider the issues related to the Coots' visitation rights with their granddaughter, the distinct issue of forum non conveniens remains to be evaluated. We are governed by the parameters of TEX.FAM. CODE ANN. § 152.007.

■ The Coots allege that Leonard waived any consideration of the inconvenient forum provisions of the Family Code by filing his motion to modify and so-called motion to transfer jurisdiction in the Midland County Court at Law. As authority for this proposition, they cite *Creavin v. Moloney*, 773 S.W.2d 698 (Tex.App.—Corpus Christi 1989, writ denied). In *Creavin*, however, the Court was confronted with a situation in which the wife and child resided in Ireland, the divorce had occurred in Pennsylvania, and the father resided in Texas. The Court concluded that the factors to be considered in deciding whether jurisdiction would be exercised weighed as much in Texas' favor as in Pennsylvania's or Ireland's. The Court concluded that forum non conveniens should not be exercised to decline jurisdiction where Texas was no less, and in some sense more, convenient than the other candidates. *Creavin*, 773 S.W.2d at 704-05. Moreover, the *Creavin* Court discussed the consequences of the wife's appearance in a Texas court in the context of a discussion concerning jurisdiction, rather than forum non conveniens. We find *Creavin* inapplicable to the waiver issue presented here. Further, because Virginia could not modify the Texas visitation order until Texas declined jurisdiction, Leonard was required to first seek relief in the Texas court.

■ The Coots allege further that the inconvenient forum provisions of TEX.FAM. CODE ANN. § 152.007 do not pertain to the present dispute because these provisions apply only to disputes relating to custody, not visitation. This argument conflicts directly with the statutory definitions we have already discussed. Section 152.007 by its own terms applies to "custody determinations."

The term "custody determination," in turn, is defined in Section 152.002(3) as including visitation rights. Section 152.007 clearly applies to the visitation dispute between the parties in the present case.

The grandparents raise further issues that go to the evaluation of whether Texas constitutes a convenient forum; we will discuss these arguments in our evaluation of the five statutory factors that influence the decision as to whether Texas is a convenient venue for a dispute.

### EVALUATION UNDER § 152.007

A Texas court is not required to exercise jurisdiction over visitation. *Hemingway*, 778 S.W.2d at 201. TEX.FAM.CODE ANN. § 152.007 declares that the trial court with jurisdiction under the UCCJA may at its discretion decline to exercise its jurisdiction if it finds that it is inconvenient to make a custody determination (which includes visitation questions), and that a court in another state would be a more appropriate forum. The trial court may make this decision sua sponte or upon a motion presented by one of the parties. The five factors to be considered are:

*(1) whether another state is or recently was the child's home state:*

Chandice has lived in Virginia for more than five years. She lived in Texas for a brief period of fourteen months. Given that she is now more than seven years of age, Virginia has been her home for most of her life.

*(2) whether another state has a closer connection with the child and the child's family or with the child and one or more of the contestants:*

Both parents (one natural and one adoptive) live in Virginia, and the child lives in Virginia. Leonard points out that the adoptive mother's family members all live in Virginia as well, leaving the maternal grandparents allegedly as the sole family members remaining in Texas. The Coots approach this factor as one of preexisting obligation; they argue that Leonard was already subject to the jurisdiction of the Texas courts under TEX.FAM.CODE ANN. § 102.011 before moving to Virginia, and that he should continue to be subject to jurisdiction even subsequent to his move. We have already acknowledged that Texas has jurisdiction to consider the issues in dispute in this case. However, if the party who has moved to another state has a preexisting obligation to parties in his first state to return to that state, the inconvenient forum provisions of the Family Code would be rendered largely moot. The automatic rule would be that visitation issues shall be resolved in the state where the parties originally resided, prior to their relocation. This rule would be contrary to the inconvenient forum provision of the Family Code.

It is certainly true, however, that the grandparents in the present case will suffer inconvenience by litigating in Virginia, and their age and health will determine the extent to which they are able to do so. The record shows that in the short term at least the Coots have proven capable of defending their interests in Virginia courts.

*(3) whether substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state:*

Due to the length of time Chandice has lived in Virginia, physicians, teachers, and day care personnel who have had the most significant contact with her are in Virginia. Doctors and other professionals who had contact with the child as an infant are in Texas. Leonard points out that the child has seen counselors in Virginia, and that she attended kindergarten there.

*(4) whether the parties have agreed on another forum that is no less appropriate:*

No such agreement exists in the present case.

*(5) whether the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 152.001:*

In order to address this factor, we consider the purposes articulated in TEX.FAM.CODE ANN. § 152.001:

**§ 152.001. Purposes; Construction of Provisions**

(a) The general purposes of this chapter are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody that have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in the state that can best decide the case in the interest of the child;

(3) ensure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline jurisdiction when the child and the child's family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody rewards;

(6) avoid relitigation of custody decisions of other states in this state insofar as is feasible;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states that enact it.

(b) This chapter shall be construed to promote the general purposes stated in this section.

The decision to exercise jurisdiction by a Texas court could run afoul of purposes (3) and (4) listed above: promoting decision making in the place where the child and his or her immediate family have the closest contacts, and discouraging controversy that would prove disruptive to the family. On balance, evaluation under Section 152.001, as required by Section 152.007, renders no clear result in favor of Texas over Virginia as the place visitation-related disputes should be resolved.

Under the five factors articulated in TEX. FAM.CODE ANN. § 152.007, we conclude that the trial court did not abuse its discretion by declining to exercise jurisdiction. We reiterate that we are not at liberty to substitute our judgment for that of the court below, even where we may disagree.

## INTERSTATE TRANSFER

██ The grandparents finally argue that the June 10, 1996 order is invalid because it purports to transfer the competing motions to modify visitation rights to a Virginia state court. We agree that this provision of the order is invalid and without effect. The Texas Family Code contemplates only intrastate, not interstate transfers. TEX.FAM.CODE ANN. §§ 103.002, 103.003. Section 152.007, relating to forum non conveniens, provides that if a court determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings or stay the proceedings on the condition that a proceeding be promptly commenced in another named state. TEX.FAM. CODE ANN. § 152.007(e). However, we decline to hold that this invalid provision renders the entire order invalid, because the substance of the order clearly relies on forum non conveniens to decline the exercise of jurisdiction that the court possessed. In such a situation, the substance of the order remains valid despite the invalid provision. TEX.R.CIV.P. 71; *Baker v. Seaver*, 567 S.W.2d 854 (Tex.Civ.App.—Eastland 1978, no writ); *Guerrero v. Standard Alloys Mfg. Co.*, 598 S.W.2d 656 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

We overrule the sole point of error and affirm the judgment of the trial court.