# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00647-CV

**Thomas Retzlaff, Appellant**

**v.**

**Monica Courteau, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
## NO. 162,752-C, HONORABLE RICK MORRIS, JUDGE PRESIDING

At issue in this child-custody case, is the district court=s order holding that the State of Texas was an inconvenient forum for determining the best interest of the child, L.C., and declining jurisdiction over L.C. in favor of a court in the State of New York. The New York court, in an order transmitted to the Texas district court, assumed jurisdiction over L.C. and all issues related to her custody. Accordingly, the Texas district court dismissed its proceedings related to L.C.[1] Thomas Retzlaff, an inmate, appeals *pro se* and *in forma pauperis*, and contends that the district court abused its discretion in ruling that Texas was an inconvenient forum for determining the best interest of L.C. and declining to exercise jurisdiction over the child. We will affirm the district court=s order declining jurisdiction over L.C. and dismissing the case.

---

[1] Additionally, the district court severed other actions pending against other parties and transferred those actions into a new cause.

**Background**

L.C. was born in 1995 to Laura who at the time was living with Kenneth Courteau.[2] In December 1996, Laura and Kenneth were involved in a car accident. Laura was killed; Kenneth was seriously injured and remained in a coma for some time. Shortly after the accident, Kenneth=s parents, Roger and Monica Courteau, came to Texas from New York to care for Kenneth and L.C. While in Texas, the Courteaus filed suit seeking to be named L.C.=s managing conservators. Kenneth was the named respondent. Martin and Gloria Lopez, Laura=s father and stepmother, intervened also seeking to be named L.C.=s managing conservators.[3] Finally, Retzlaff intervened in the suit, contending that he was L.C.=s biological father and seeking conservatorship of the child. At some point in 1997, the Courteaus, Kenneth, and L.C. moved from Texas to New York to be near family.[4]

---

[2] L.C.=s mother is identified in court records as ALaura Courteau@ and ALaura Anel Ellison.@ Because it is unclear what Laura=s last name was, we will use her first name. Whether a common-law marriage existed is not addressed or established in the record.

[3] The record reflects that the district court allowed the Lopezes= attorney to withdraw from the case in May 1999. The record further reflects that despite their attorney=s withdrawal from the case, the Lopezes, as parties, continued to be notified of pleadings and court actions. The Lopezes, however, have not participated in any court proceedings since May 1999.

[4] Roger Courteau, Kenneth=s father, died in 1998.

For additional background on this custody dispute, we refer to our previous opinion. *See Retzlaff v. Courteau*, No. 03-00-00321-CV, 2001 Tex. App. LEXIS 1258 (Tex. App.CAustin Feb. 28, 2001, no pet.) (not released for publication). In the previous opinion, we reversed the district court=s dismissal of all trial-court proceedings. In that case, this Court determined that because Retzlaff proved that he did not timely learn of the district court=s dismissal, the district court abused its discretion in declining to reinstate Retzlaff=s pleadings absent a showing that it considered other options. *Id.* In the previous opinion, we noted specifically that Athe circumstances of [L.C.=s] domicile and conservatorship may have changed during the pendency of this appeal, affecting Retzlaff=s ability to proceed with this suit as pled in Bell County. . . . This suit is subject on remand to those potentially changed circumstances.@

Indeed, since this Court=s previous opinion, circumstances related to L.C. and the parties have changed. In March 2001, Kenneth commenced a paternity and child custody proceeding in the State of New York. Kenneth submitted as evidence to the New York court a sworn statement that he had sexual intercourse with the deceased mother of L.C. during the possible time of her conception. Kenneth also presented a copy of L.C.=s birth certificate identifying him as the father, along with a DNA paternity LabCorp report reflecting a probability of 99.98% that he was L.C.=s biological father. The New York court appointed a law guardian who recommended to the court that it would be in L.C.=s best interest for the New York court to grant Kenneth=s requests. In May 2001, the court declared that Kenneth is L.C.=s biological father and awarded him custody of L.C.

***Retzlaff corresponds with the New York court***

On July 3, 2001, the New York court received a letter from Retzlaff requesting that the court set aside or otherwise void its order of paternity and custody. Retzlaff informed the New York court that in January 1997, a child custody proceeding was commenced in Texas and that, as a result, the State of Texas had exclusive jurisdiction over L.C. pursuant to the Uniform Child Custody Jurisdiction Act (AUCCJA@) and the Federal Parental Kidnapping Prevention Act (APKPA@). Therefore, he asserted that the New York court was acting without jurisdiction.

In light of Retzlaff=s assertions, the New York court appointed another law guardian to investigate any matters pending in the Texas courts and sent letters to the Texas district court and to Retzlaff notifying them of the court=s action. Retzlaff responded by letter to the New York court and law guardian on July 10. The New York court found that in his letter Retzlaff made it clear that his interest in L.C. was to exact a monetary settlement from the Courteaus by persisting in litigation. In his letter to the law guardian and the New York court, Retzlaff emphasized that he was Anot going away anytime soon@ and that he would Acontinue litigating this case, using every legal means at [his] disposal.@ Also in the letter, Retzlaff stated that he hoped the law guardian Amight help facilitate a fair settlement.@ In another letter to the New York court and the law guardian on July 27, Retzlaff moved that the paternity suit be reopened because the proceeding in Texas was not a paternity action, that A[his] paternity had already been established as a matter of law via Kenneth Courteau=s [deemed] admissions in which he admitted that he is not this child=s father, and also via the child=s mother=s Affidavit of Paternity which is equivalent to a judicial determination pursuant to Tex. Fam. Code ' 160.205(a).@ The New York court responded with letters to Retzlaff and the Texas district court instructing Retzlaff that if he is the legal father of L.C. under Texas law, it was his responsibility

**4**

to forward a certified copy of any document evidencing his status to the New York court by August 28. The New York court informed Retzlaff that these documents were necessary for the court to determine whether he was a necessary party to the paternity action and whether he had standing to challenge the New York court=s exercise of jurisdiction.

*Texas proceedings*

On May 4, 2001, Monica Courteau, who was a party in the underlying district court proceeding, moved to transfer the child custody portion of the Texas case to New York, contending that L.C. had resided in New York for more than two years and that all evidence regarding the child=s best interest was located in New York.

In June 2001, Retzlaff filed a second amended suit in intervention in Texas requesting that he be declared L.C.=s biological father and that he be named the child=s sole managing conservator. Monica responded and moved to strike Retzlaff=s second intervention on the basis that the New York court had jurisdiction over L.C., that the New York court had adjudicated Kenneth to be the biological father of L.C. such that the child=s paternity was *res judicata*, and that the New York order disposed of any issues Retzlaff might have regarding the child. Retzlaff responded and the Texas district court held a hearing on August 16.[5] At the hearing, the district court addressed various pending motions, but focused primarily on Monica=s motion to transfer, which urged that Texas was an inconvenient forum for determining what was in L.C.=s best interest and that the New York court was a more convenient forum. At the conclusion of the

---

[5] The *ad litem* attorney for L.C. and Monica=s attorney appeared at the hearing while Retzlaff appeared via telephone conference.

hearing, the court rendered an order from the bench that Texas would decline jurisdiction over L.C., and that all further proceedings in Texas regarding the child were stayed pending confirmation that the New York court would assume jurisdiction.

On August 31, 2001, the Texas district court signed a written order concluding that New York is L.C.=s home state and has a closer connection than Texas with the child who is living there with her father and grandmother; the court also concluded that evidence concerning L.C.=s welfare is more readily available in New York, and a New York court can best decide what is in L.C.=s best interest, while Texas is an inconvenient forum to make that determination. Further, the district court declined jurisdiction regarding custody of L.C., stayed all proceedings in Texas until the New York court agreed to assume jurisdiction, and announced that once the New York court assumed jurisdiction, the case pending in Texas would be dismissed. The district court also severed all other actions pending against Monica and Kenneth into a separate cause. The district court rendered findings of fact and conclusions of law related to the portion of its order declining jurisdiction.

*New York order*

On August 28, 2001, at a court appearance, the law guardian reported to the New York court that despite Retzlaff=s claim that an Aaffidavit of paternity@existed, Texas court officials were unable to produce any such document from Retzlaff=s files. The law guardian also informed the court that Retzlaff had failed to produce such a document and was now claiming that Texas court officials had lost this crucial document. Retzlaff informed the law guardian by letter that $5000 was his price for discontinuing his claims against the Courteaus and agreeing to have no further contact with the Courteau family.

**6**

On August 29, the New York court determined that it would continue to exercise jurisdiction over L.C. The court=s order and decision outlined the Texas court=s findings that New York was the child=s home state and that New York, rather than Texas, was best suited to determine what was in L.C.=s best interest. The order provided that the Texas court=s findings were consistent with New York law and that the New York court agreed with the Texas court=s findings. The remaining issue for the New York court was whether its exercise of jurisdiction over L.C. was consistent with the PKPA. *See* 28 U.S.C.A. ' 1738A. The court determined that any issue of whether New York could exercise jurisdiction over custody of L.C. consistent with the PKPA was resolved when the Texas court declined jurisdiction over the child. The New York court transmitted a copy of its order to the Bell County District Court. Finally, the court denied Retzlaff=s motion for rehearing Awithout prejudice to [Retzlaff=s] right to initiate appropriate proceedings in Erie County Family Court by the filing of a sufficient petition.@

*Texas dismissal*

On August 31, 2001, the Texas district court dismissed the underlying cause, noting that the New York court had assumed jurisdiction over L.C. Retzlaff raises three issues in this appeal. He contends that the district court (1) abused its discretion in ruling that Texas was an inconvenient forum to determine the best interest of L.C.; (2) erred in admitting testimony from L.C.=s attorney *ad litem* over Retzlaff=s objections; and (3) erred in denying his motion for new trial.

**Uniform Child Custody Jurisdiction Act**

7

Because this custody case commenced in 1997 and was pending on September 1, 1999, the issues before us are governed by the former Texas version of the UCCJA. *See* Act of April 22, 1999, 76th Leg., R.S., ch. 34, ' 2, 1999 Tex. Gen. Laws 70; Act of April 6, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws 140-46 (formerly Tex. Fam. Code Ann. '' 152.001-.025, since repealed).[6]

A Texas court with jurisdiction to make a child custody determination may, *sua sponte*, on a motion of a party or guardian *ad litem*, or on a motion of any other representative of the child, decline to exercise its jurisdiction at any time before rendering a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws 143-44, (formerly Tex. Fam. Code Ann. ' 152.007 (a),(b), since repealed). For convenience we refer to this governing section as Aformer section 152.007.@ In determining whether it is an inconvenient forum, the court shall consider whether it is in the best interest of the child that another state assume jurisdiction. Former ' 152.007(c). The court may consider, among other factors, whether (1) another state is the child=s home state; (2) another state has a closer connection with the child and the child=s family or with the child and one or more of the contestants; (3) substantial evidence concerning the child=s present or future care, protection, training, and personal relationships is more readily available in another state; (4) the parties have

---

[6] In 1999, Texas adopted the Uniform Child Custody Jurisdiction Enforcement Act (AUCCJEA@) which replaced the UCCJA. *See* Act of April 22, 1999, 76th Leg., R.S., ch. 34, ' 1, 1999 Tex. Gen. Laws 52-70 (UCCJEA is set out in Texas Family Code Ann. '' 152.001-.317 (West 2002)).

agreed on another forum that is no less appropriate; and (5) the exercise of jurisdiction would contravene any of the stated purposes of the UCCJA. *Id.* Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to ensuring that jurisdiction will be exercised by the more appropriate court. *Id.* ' 152.007(d).

Also relevant to the issue is the UCCJA provision requiring that when a Texas court is informed, during the pendency of a custody proceeding, that a proceeding concerning custody of the same child is pending in another state, before assuming jurisdiction, the Texas court shall stay the proceeding and communicate with the other court to the end that the custody issue may be litigated in the more appropriate forum. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws 142 (formerly Tex. Fam Code Ann. ' 152.006 (c), since repealed). Further, if a Texas court is informed that a custody proceeding was commenced in another state after the Texas court assumed jurisdiction, it shall likewise inform the other court to the end that the custody issues may be litigated in the more appropriate forum. *Id.*

## Discussion

### *Inconvenient forum*

All of Retzlaff=s contentions center around his complaint that the district court abused its discretion in ruling that Texas was an inconvenient forum to determine custody issues regarding L.C. and that the New York court was a more appropriate forum to determine what was in her best interest. The district court=s determination will not be disturbed on appeal absent an abuse of discretion. *See Coots v. Leonard*, 959 S.W.2d 299, 301 (Tex. App.CEl Paso 1997, no pet.) (citing *Creavin v. Moloney*, 773

**9**

S.W.2d 698, 702 (Tex. App.━Corpus Christi 1989, writ denied)). In determining whether the Texas court abused its discretion, we review whether the court acted without reference to any guiding rules and principles and whether the court≠s actions were arbitrary and unreasonable. *Id.* (citing *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939), *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1984)). The fact that the trial court may decide a matter within its discretion differently than would the appellate court does not demonstrate an abuse of discretion. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

It was uncontested that L.C. has been living with the Courteaus in New York since 1997 and that New York is her home state. It is also undisputed that all information regarding L.C.≠s current care and all of her known family relationships exist in New York. There is nothing in the record reflecting that any evidence exists in Texas regarding her care or her significant relationships. The only alleged connection between L.C. and the State of Texas is Retzlaff, who continues to purport to be L.C.≠s biological father, despite a New York court order, based on paternity tests and other relevant evidence, declaring that Kenneth is L.C.≠s biological father. We must give full faith and credit to the facially valid New York paternity order. *See Villanueva v. Office of Atty. Gen.*, 935 S.W.2d 953, 956 (Tex. App.━San Antonio 1996, writ denied) (citing *Durfee v. Duke*, 375 U.S. 106, 111 (1963)). Further, we afford the New York paternity order naming Kenneth the biological father of L.C. the same *res judicata* effect it would have in New York. *Id.* (citing *Durfee*, 375 U.S. at 109). Despite Retzlaff≠s assertions, the New York court≠s order is *res judicata* regarding L.C.≠s paternity.

Among the stated goals of the UCCJA is the avoidance of jurisdictional competition and continued relitigation of custody decisions, and the promotion of cooperation between the states to ensure that a custody decision is rendered in the state that can better determine the best interest of the child. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws 140 (formerly Tex. Fam Code Ann. ' 152.001, since repealed). In this instance, the courts in Texas and New York communicated in an exemplary fashion to meet the stated goal of the UCCJAC to determine the forum best suited to review and determine issues regarding L.C.=s custody. We hold that there was no abuse of discretion by the district court in declining jurisdiction over L.C. in favor of the New York court. Retzlaff=s first issue is overruled.

In his second issue, Retzlaff contends that the district court erred in admitting testimony from Michael Gibbs, L.C.=s attorney *ad litem*, over objection. The admission of evidence is within the district court=s discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). To obtain reversal of a judgment based on error in the admission of evidence, Retzlaff must show that the district court=s ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. *See id.* We hold that Retzlaff has failed to show that error, if any, in the district court=s admission of testimony from Gibbs was calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex. R. Evid. 103; Tex. R. App. P. 44.1. Retzlaff=s second issue is overruled.

Finally, Retzlaff contends that the district court erred in overruling his motion for new trial.[7] In his motion for new trial, Retzlaff contended that the court=s findings of fact and conclusions of law were

---

[7] The clerk=s record reflects that the district court set a hearing on the motion for November 1, 2001, and that notices were sent to all parties, return receipt requested. The district court=s docket sheet reflects that on November 1, the court called the case, no one appeared, the court reviewed the file, and

**11**

unsupported by the evidence and that the district court abused its discretion in declining jurisdiction. Having determined that the district court did not abuse its discretion in declining jurisdiction over L.C. in favor of a New York court, we overrule Retzlaff=s third issue.

We affirm the district court=s order declining jurisdiction over L.C. and dismissing the case.


Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: October 24, 2002

Do Not Publish

---

overruled the motion for new trial.