COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
BOBBY DICKERSON,                                   )                  No. 08-04-00010-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  383rd District Court
)
ROELMINA


 DOYLE and                                   )                  of El Paso County, Texas
ROBERT FRANCIS DOYLE,                            )
                                                                             ) (TC# 2002CM7120)
                                    Appellees.                        )

O P I N I O N

            This is a paternity case arising out of an unconventional and non-traditional household. Bob
Dickerson appeals the trial court’s order sustaining a special appearance and declining jurisdiction
on the basis of forum non conveniens. We affirm.FACTUAL SUMMARY
            Frank and Roelmina Doyle, married for ten years, have a thirteen-year-old adopted daughter,
Michelle,


 and a now five-year-old son, Robert. It is Robert’s paternity which is at issue. The
Doyles lived in Seoul, Korea where Frank worked for the Corps of Engineers until his retirement in
September 2001. Some time during 1997 or 1998, the Doyles met Bob Dickerson, who was serving
in the United States Army. Dickerson moved in with the Doyles in March 1998 when his service
ended and he, too, became employed by the Corps of Engineers. Robert was born in Seoul on
February 13, 2000. 
            When Frank retired, the family moved to Saratoga Springs, New York and built a house. 
Frank intended to make this the family’s final home since he had grown up in the area. Initially,
Dickerson moved with the Doyles but briefly returned to Korea. In December 2001, Dickerson
returned to New York and announced he had obtained a position with the Corps of Engineers in
White Sands, New Mexico. When he left for White Sands, he took Roelmina and Robert with him. 
Frank admitted that Roelmina accompanied Dickerson to White Sands willingly. They arrived in
El Paso on December 14, 2001 and stayed first at the Fort Bliss Inn. In January 2002, Roelmina, 
Dickerson, and Robert moved into an apartment. 
            Frank soon listed the New York house for sale. He and Michelle followed the others to El
Paso and moved into the apartment in April. Frank then purchased a home in west El Paso and the
Doyles and Dickerson moved into the residence. Frank admitted that Dickerson would sometimes
sleep in the master bedroom with Roelmina. Roelmina admitted that Robert called Dickerson “papi”
and Frank “daddy.” 
            Frank did not intend for the home to be a permanent residence


 and had plans to move the
family to the southeastern United States. He purchased the home as an investment since he did not
believe in paying rent. He grew bored with retirement and again applied with the Corps of
Engineers. He was offered a one-year tour in Korea which was to be “unaccompanied,” meaning
his family would stay behind. However, he hoped to have the tour extended so that Roelmina and
the children could join him. Frank put the El Paso house on the market and planned for Roelmina
to live there until it sold. Roelmina would then move to southeastern Alabama. Frank left for Korea
in August 2002. By this time, Dickerson had obtained employment in Hawaii, although he had not
yet left Texas. 
            While in Korea, Frank learned from Roelmina that she and Dickerson were not getting along. 
She complained that Dickerson had become both physically and verbally abusive and she did not
intend to accompany him to Hawaii. Dickerson arranged an appointment for paternity testing on
November 5, 2002 but Roelmina talked him out it. Nevertheless, Dickerson threatened to take
Robert to Hawaii. Fearing he would abscond with the child, Roelmina left El Paso with her son on
November 6. When Dickerson returned to El Paso from a business trip to Phoenix, he found
Roelmina and Robert gone. He called Frank in Korea asking where they were. On November 7,
2002, Dickerson filed his petition to establish the parent-child relationship. He alleged that the court
had subject matter jurisdiction since all the parties had resided in El Paso County for six months
prior to his filing suit. Roelmina and Robert ended up in Birmingham, Alabama; Michelle stayed
temporarily with family friends in Louisiana. Roelmina was served at her apartment in Birmingham
in December 2002. Frank returned to the States right after Christmas and was served at the airport
in Birmingham.
            Dickerson moved to Hawaii in January 2003 to begin his job. Claiming that he was merely
on temporary assignment to Hawaii and would return to El Paso at the end of his project, Dickerson
considered his residence to be El Paso, Texas where he was registered to vote and maintained a
Texas driver’s license. 
 

APPLICABLE STATUTORY FRAMEWORK
            There is no dispute that Texas was the child’s home state at the time this parentage action
was filed. Frank admitted that Robert had lived in El Paso for approximately eleven months.
Consequently, we are not presented with an issue of subject matter jurisdiction under the Uniform
Child Custody Jurisdiction and Enforcement Act.


 Rather, we must address jurisdiction under the
Uniform Parentage Act. The Texas Family Code mandates that an individual may not be adjudicated
to be a parent unless the court has personal jurisdiction over him. Tex.Fam.Code Ann. § 160.604(a)
(Vernon 2002 & Vernon Supp. 2004-05). Dickerson submitted himself to the jurisdiction of the
court by filing his parentage suit. Subsection (b) provides that a court having jurisdiction to
adjudicate parentage may exercise personal jurisdiction over a non-resident if the conditions in
Section 159.201 are satisfied. Section 159.201, a long-arm statute, allows the court to determine
parentage and exercise personal jurisdiction over non-residents if they have resided with the child
in this state. In any event, even if a Texas court has both subject matter jurisdiction and personal
jurisdiction, it may decline to exercise its jurisdiction if it determines that it is an inconvenient forum
and that a court of another state is a more appropriate forum. Tex.Fam.Code Ann. § 152.207(a). 
Finally, we note that Frank is presumed to be Robert’s father. Tex.Fam.Code Ann. § 160.204(a)(1)
(a man is presumed to be the father of a child if he is married to the mother and the child is born
during the marriage). Because Robert is a child with a presumed father, a statute of limitations
applies. Tex.Fam.Code Ann. § 160.607 (a suit to adjudicate parentage of a child having a
presumed father shall be brought before the child’s fourth birthday;


 however a proceeding to
disprove the presumed father/child relationship may be brought at any time if the court determines
that the presumed father and the mother did not live together or engage in sexual intercourse with
one another during the probable time of conception and the presumed father never represented to
others that the child was his own). 
PROCEDURAL POSTURE
            The Doyles filed a special appearance and asked that Dickerson’s petition be dismissed. In
his response, Dickerson argued that the court had long-arm jurisdiction over the non-residents since
the parties had resided in El Paso with the child. Subject to their special appearance, the Doyles filed
a motion to dismiss, asking the court to decline jurisdiction on the basis of forum non conveniens. 
            The special appearance hearing was conducted on April 1, 2003. At that time, there was
pending in Alabama a motion for a temporary restraining order seeking to enjoin Dickerson from
harassment.


 Following the hearing, the trial court granted the special appearance, finding that the
Doyles were residents of Alabama, that Dickerson was a resident of Hawaii, that Texas was not a
convenient forum, and that Alabama was a more appropriate forum. Orally, the court pronounced:
I’m going to abate the proceedings until such time as the proper motion is filed in
Alabama and the Alabama court accepts jurisdiction. If the Alabama court does not
accept jurisdiction, then I’ll retain jurisdiction. I’m going to give the parties 45 days
to find out whether or not Alabama is going to accept jurisdiction. 

The written order, however, specified:
 
IT IS THEREFORE ORDERED, that the Special Appearance . . . is hereby granted,
that as the Special Appearance is granted and as this court is not a convenient forum
for the litigation [of] the subject matter of this cause and as the State of Alabama is
a more appropriate forum, IT IS FURTHER ORDERED that further proceedings in
this cause in this state are stayed and IT IS ORDERED that within 45 days from the
date of the hearing this case be transferred to a proceeding in the State of Alabama
and thereafter this cause is dismissed and that these orders are in the best interest of
the minor child the subject of this suit. [Emphasis added].

Dickerson objected to the order because it purportedly granted the motion for forum non conveniens
without the benefit of a hearing and without permitting Dickerson to respond. The trial
court ultimately dismissed the Texas suit since no proceedings were brought in Alabama within the
45-day period. From this order, Dickerson appeals. In three issues for review, Dickerson complains
that the court erred by (1) sustaining the special appearance; (2) dismissing the parentage suit rather
than continuing the stay until the action could be transferred to Alabama; and (3) condoning the
Doyles’ removal of the child from Texas and compelling Dickerson’s acquiescence to Alabama’s
jurisdiction. For purposes of our analysis, we will consider these issues out of order and begin with
Issue Two.
FORUM NON CONVENIENS
            Dickerson raises a two-part issue complaining of the trial court’s decision to decline
jurisdiction based upon the doctrine of forum non conveniens. He first complains that he was
deprived of a hearing on the Doyles’ motion. Secondly, he argues that the court erred by dismissing
the suit after the 45-day stay rather than extending the stay until the cause was “transferred.” We
review the trial court’s ruling for an abuse of discretion. Coots v. Leonard, 959 S.W.2d 299, 301
(Tex.App.--El Paso 1997, no writ). 
 

Lack of Hearing?
            Dickerson acknowledges that the Family Code allows a court with subject matter jurisdiction
to decline to exercise that jurisdiction if it determines that Texas is an inconvenient forum and that
another state is a more convenient forum. Tex.Fam.Code Ann. § 152.207. The statute permits the
court to make this determination “at any time” and the issue “may be raised upon motion of a party,
the court’s own motion, or request of another court.” Tex.Fam.Code Ann. § 152.207(a). 
Subsection (b) enumerates eight factors which a court shall consider and specifies that the court shall
allow the parties to submit relevant information.


 Tex.Fam.Code Ann. § 152.207(b).
            The hearing below was scheduled for the purpose of considering the Doyles’ special
appearance. They did not seek a hearing on their motion for forum non conveniens due to a concern
that in doing so, they might waive their special appearance. They asked Dickerson to agree to a
hearing on the forum issue immediately following the hearing on the special appearance. Frank had
come from Korea to attend the hearing and Roelmina had traveled from Alabama. Dickerson
specifically declined their request. Nevertheless, the evidence presented in conjunction with the
special appearance encompassed all eight of the factors which the trial court needed to consider. 
            • Roelmina testified to verbal and physical abuse, as well as her fear of Dickerson. She had
filed suit in Alabama seeking a temporary restraining order to prevent further harassment by
Dickerson. Her Alabama attorney accompanied her to El Paso for the hearing. 

            • Robert had lived in Alabama for nearly five months and was going to school there. 
 
            • There is a considerable distance between El Paso and Birmingham, but no one lived in El
Paso any longer.

            • Frank was employed by the Corps of Engineers and currently working in Korea. He
planned to return to Alabama when his contract of employment expired in August 2003. Dickerson
was employed by the Corps and working in Hawaii at the time of the special appearance. By the
time of the dismissal hearing, he was in Iraq. Travel expenses were likely to be considerable
regardless of whether Texas or Alabama exercised jurisdiction.

            • The parties had not agreed as to which state should assume jurisdiction.

            • The paternity testing could be conducted in either Texas or Alabama. In addition to
establishing paternity, however, Dickerson sought appointment as the child’s sole managing
conservator. Evidence pertaining to conservatorship was more likely available in Alabama, where
the child lived.

            • The trial court specifically asked the Alabama attorney whether the State of Alabama would
have jurisdiction and the attorney responded that he believed it would.




            In the trial court, Dickerson complained that the Doyles were required to set a hearing on
their motion prior to the court’s ruling. This argument does not take into consideration the language
of the statute allowing the court to decline jurisdiction on its own motion, provided that the court
allows the parties to submit information. Dickerson has made no showing that he was not allowed
to submit relevant information, nor has he articulated what additional information he would have
elicited had he been afforded an opportunity. 
No Inter-State Transfer
            Perhaps having recognized this flaw, Dickerson argues on appeal that the court erred by
dismissing the suit after the 45-day stay rather than extending the stay until the cause was
“transferred.” “Transfer” is a misnomer. The statute requires that if the court determines Texas to
be an inconvenient forum, “the court shall stay the proceedings upon condition that a child custody
proceeding be promptly commenced in another designated state. . . .” Tex.Fam.Code Ann.
§ 152.207(c). 
            The Family Code contemplates only intra-state transfers. It provides no mechanism for an
inter-state transfer. Coots, 959 S.W.2d at 307. Inasmuch as the trial court had no authority to
transfer the parentage suit, it did not err by failing to do so. Dickerson had a 45-day window within
which to bring suit in Alabama. The suit was not dismissed until six months had elapsed. Finding
no error, we overrule Issue Two.
UNCLEAN HANDS
            In Issue Three, Dickerson complains that the trial court failed to abide by the mandate of
Section 152.208,


 which requires a trial court to decline jurisdiction due to a party’s unjustifiable
conduct, such as abduction or concealment. He argues that this provision is applicable because
Roelmina wrongfully fled the State of Texas and concealed her whereabouts in Alabama. We
disagree with his interpretation of the statute. Jurisdiction is not to be declined based upon a party’s
unjustifiable conduct. A court shall decline jurisdiction “because a person seeking to invoke its
jurisdiction has engaged in unjustifiable conduct . . . .” Tex.Fam.Code Ann. § 152.208(a). 
Dickerson is the party seeking to invoke the jurisdiction of Texas courts. Whether Roelmina has
attempted to invoke jurisdiction in Alabama by virtue of unjustifiable conduct is a question for the
Alabama court to consider. At that point, the court would necessarily address Roelmina’s claims of
family violence, as the Commissioners’ Comment duly notes:
The focus in this section is on the unjustified conduct of the person who invokes the
jurisdiction of the court. A technical illegality or wrong is insufficient to trigger the
applicability of this section. This is particularly important in cases involving
domestic violence and child abuse. . . . An inquiry must be made into whether the
flight was justified under the circumstances of the case.

Sampson & Tindall, Texas Family Code Annotated § 152.208, Commissioners’ Comment p. 536
(2003). Issue Three is overruled.
SPECIAL APPEARANCE
            In Issue One, Dickerson complains that the trial court erred in sustaining the Doyles’ special
appearance. He argues that Texas has long-arm jurisdiction since the Doyles resided in Texas with
Robert.
Standard of Review
            The Due Process Clause of the Fourteenth Amendment limits the power of a state court to
render a valid personal judgment against a nonresident defendant. World-Wide Volkswagen Corp.
v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Due process requires
that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of
the court. Id. The Due Process Clause, by ensuring the orderly administration of the laws, “gives
a degree of predictability to the legal system that allows potential defendants to structure their
primary conduct with some minimum assurance as to where that conduct will and will not render
them liable to suit.” Id. at 297, 100 S.Ct. at 567, 62 L.Ed.2d 490. 
            Whether a court has personal jurisdiction over a defendant is a question of law. American
Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002), cert. denied, 537
U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003); BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002). But in resolving this question of law, a trial court must frequently
resolve questions of fact. Coleman, 83 S.W.3d at 806; BMC, 83 S.W.3d at 794. On appeal, the trial
court’s determination to grant or deny a special appearance is subject to de novo review, but
appellate courts may be called upon to review the trial court’s resolution of a factual dispute. 
Coleman, 83 S.W.3d at 806; BMC, 83 S.W.3d at 794. When the trial court does not issue findings
of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of
its judgment. Coleman, 83 S.W.3d at 806; BMC, 83 S.W.3d at 795. However, when the appellate
record includes the reporter’s and clerk’s records, these implied findings are not conclusive and may
be challenged on appeal for legal and factual sufficiency. BMC, 83 S.W.3d at 795.
Personal Jurisdiction Under the Parentage Act
            A court may exercise personal jurisdiction over a nonresident if the conditions in Section
159.201 are satisfied. Tex.Fam.Code Ann. § 160.604(b). Section 159.201 provides that in a
proceeding to determine parentage, a tribunal may exercise personal jurisdiction over a non-resident
if the individual has resided with this child in Texas. Tex.Fam.Code Ann. § 159.201(3)(Vernon
Supp. 2004-05). The court below may have concluded that it could properly exercise personal
jurisdiction over the Doyles. However, it declined to do so because no one lived in Texas and
Alabama was a more appropriate forum. We have found no error in this ruling. Consequently,
whether the court could have exercised jurisdiction is moot. It chose not to, as the statute clearly
allows. Issue One is overruled and the judgment of the trial court is affirmed.

June 30, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.